[824 NYS2d 249]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CYNTHIA LONG, Appellant.

First Department, November 14, 2006

### APPEARANCES OF COUNSEL

*Center for Appellate Litigation*, New York City (*Robert S. Dean* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney*, New York City (*Tracy L. Conn* and *Mark Dwyer* of counsel), for respondent.

### OPINION OF THE COURT

NARDELLI, J.

In this appeal, we are asked to determine whether Supreme Court's summary denial of defendant's suppression motion was proper.

CPL 710.60 (1) requires a suppression motion be in writing, state the legal grounds upon which it is based, and "contain sworn allegations of fact, whether of the defendant or of another person or persons, supporting such grounds." A court is permitted to summarily deny a motion to suppress if the movant's papers do not allege a ground constituting a legal basis for such motion, or the sworn allegations fail, as a matter of law, to support the ground alleged (CPL 710.60 [3]; *People v Pagan*, 304 AD2d 980 [2003], *lv denied* 100 NY2d 564 [2003]). In assessing the sufficiency of a defendant's factual allegations, and whether a defendant is entitled to a hearing, the Court of Appeals, in *People v Mendoza* (82 NY2d 415 [1993]), provided the following guidance: "[T]he sufficiency of defendant's factual allegations should be evaluated by (1) the face of the pleadings, (2) assessed in conjunction with the context of the motion, and (3) defendant's access to information" (82 NY2d at 426; *see also People v Jones*, 95 NY2d 721, 725 [2001]). The Court in *Mendoza*, however, also cautioned that "[h]earings are not automatic or generally available for the asking by boilerplate allegations" (82 NY2d at 422; *see also People v Gadsden*, 273 AD2d 701 [2000], *lv denied* 95 NY2d 934 [2000]).

Defendant, at her arraignment on June 2, 2004, pleaded not guilty, at which point Justice Berkman read the following arrest write-up in open court:

> "Defendants observed together at Circuit City by security attempting to buy a camcorder with credit cards. Long produced a credit card. When asked for

ID, she is unable to produce it. Cox offers a separate credit card but refuses to remove identification from his wallet.

"Both defendants leave the store. Security calls the police. After observing the defendants for twenty minutes, approximately, the police stopped the car in which both defendants are passengers. Cox is driving, Long is in the back seat.

"The arresting officer notices heroin on the front passenger floorboard in front of separately charged Joseph Brown. . . . Black leather wallet recovered from the backseat contains six credit cards in the name of Dana Brockman (phonetic), which were reported stolen earlier that day."

The prosecutor also noted during the proceedings that defendant had been "caught on video," and served her with a copy of the indictment and the People's voluntary disclosure form (VDF). The VDF, among other things, indicated that six credit cards and/or banking cards, a black wallet, and two envelopes of heroin had been recovered from defendant.

Defendant thereafter filed an omnibus motion on June 28, 2004 seeking, inter alia, to suppress the physical evidence seized from her or, in the alternative, for a hearing. In support of the motion, defense counsel averred that there was nothing illegal about the operation or ownership of the vehicle in which defendant was a passenger, and that she had a legitimate expectation of privacy in the automobile. Defendant denied that she had been involved "in any illegal activity and asserts that she had the consent of the owner and was a lawful user of the vehicle," and that she "was not holding in open view any contraband nor did she drop any contraband to the ground."

The motion court, in a written decision dated July 22, 2004, summarily denied the motion to suppress, finding that defendant merely denied illegal activity and failed to address any of the allegations underlying her arrest. We agree and affirm.

Defendant, in our view, had ample access to relevant information, given the totality of the record and, in particular, the court's colloquy concerning the facts of this case, to make a proper suppression motion (see People v Roberts, 23 AD3d 245, 245-246 [2005], lv denied 6 NY3d 817 [2006]; People v Zigler, 305 AD2d 332 [2003], lv denied 100 NY2d 590 [2003]). Instead,

defendant set forth general denials which failed to raise a factual dispute requiring a hearing, and her assertions of innocent conduct in the vehicle, at the time of her arrest, are unavailing (*People v Jones*, 95 NY2d at 726; *People v Lopez*, 13 AD3d 152 [2004], *affd* 5 NY3d 753 [2005]).

The arrest write-up described, in detail, the predicate for defendant's arrest. According to the write-up, the police stopped the vehicle based on information, which, as will be discussed in further detail, at least arguably provided reasonable suspicion that defendant tried to commit a crime in the Circuit City store. The write-up further alleged that during the stop of the vehicle, the police observed drugs in open view (*see* Penal Law § 220.25 [presumption of possession by automobile occupants]). In her moving papers, defendant did not deny the allegations regarding her conduct in the store, assert that such conduct was an insufficient basis for an automobile stop, or set forth any other basis for suppression.

Although defendant made additional allegations in a renewal motion (denominated a reargument motion), the motion court properly exercised its discretion in denying that motion, since defendant did not establish any reason for omitting the new allegations from her original motion (*see People v Ruth*, 260 AD2d 296 [1999], *lv denied* 93 NY2d 929 [1999]; *People v Roberts*, 23 AD3d at 246; *Foley v Roche*, 68 AD2d 558, 568 [1979]). The trial court also properly exercised its discretion when it declined to entertain a further renewal motion during trial (*see* CPL 710.40 [4]).

The dissent, in reaching a contrary conclusion, engages in a lengthy discussion of the trial testimony, which, in our view, has no retroactive application to the suppression motions before Justice Berkman and the issue of whether or not they were properly decided. In any event, it is settled that the police may stop a vehicle based upon a "reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime" (*People v Spencer*, 84 NY2d 749, 753 [1995], *cert denied* 516 US 905 [1995]; *see also People v Taylor*, 31 AD3d 1141, 1142 [2006]). Reasonable suspicion is " 'that "quantum of knowledge sufficient to induce an *ordinarily prudent and cautious [person] under the circumstances* to believe criminal activity is at hand" ' " (*People v William II*, 98 NY2d 93, 98 [2002] [emphasis added], quoting *People v Martinez*, 80 NY2d 444, 448 [1992], quoting *People v Cantor*, 36 NY2d 106, 112-113 [1975]).

In this case, defendant and a companion, Robert Cox, entered a Circuit City store where defendant, through security cameras, was viewed repeatedly wiping her face with a napkin and fanning herself with a wallet. Defendant and Cox subsequently selected a camcorder from a display and, when attempting to purchase the item, defendant produced a credit card. When asked to produce identification in conjunction with the purchase, defendant stated that she had none, despite the fact she was in possession of a wallet. Cox, in response, provided a second credit card and, when asked to produce identification, he showed that he had a New York State identification card in his wallet. Cox was then requested to remove the identification so that it could be inspected, at which point he said something to defendant and they both left the store.

Given that both defendant and Cox were unable, or unwilling, to produce identification in conjunction with a credit card purchase, a common security check utilized to deter credit card theft, and suspiciously abandoned their efforts to make a purchase, we find such conduct sufficient to induce an ordinarily prudent and cautious person, under the circumstances, to believe that criminal activity is at hand. The police, who had been called by the Circuit City store investigator, therefore, had reasonable suspicion to stop the vehicle in which defendant was a passenger.

Thus, even if, like the dissent, we were to consider the evidence adduced at trial, we would reject the dissent's conclusion that defendant has, on this appeal, demonstrated an illegal search and seizure. Of course, in the present procedural posture of the case, the issue is not the ultimate legality of the search and seizure, but defendant's entitlement to a hearing. We conclude that the description of the events in the Circuit City store that was contained in the People's write-up was sufficient to apprise defendant of the basis upon which the People were seeking to justify the vehicle stop and ensuing seizure. Since defendant did not address her alleged conduct in Circuit City, her assertions of innocent conduct at the time of the vehicle stop did not entitle her to a hearing.

Accordingly, the judgment of the Supreme Court, New York County (Carol Berkman, J., at motions; Michael J. Obus, J., at renewal motion, jury trial and sentence), rendered December 16, 2004, convicting defendant, after a jury trial, of six counts of criminal possession of stolen property in the fourth degree, and sentencing her, as a second felony offender, to concurrent terms of 2 to 4 years, should be affirmed.

CATTERSON, J. (dissenting). Because there is no evidence or testimony in the record that indicates the basis for the stop of the defendant's car, much less that the police established reasonable suspicion for the stop, I believe the defendant was entitled, at the very least, to a suppression hearing. I, therefore, respectfully dissent.

On May 11, 2004, police stopped the defendant while she was riding in an automobile driven by codefendant, Robert Cox. Police Officer Timothy Kornbluth, one of the officers who made the stop, testified at trial that no traffic infractions had been committed by Cox.

The stop occurred approximately a half hour after the defendant and Cox left a Circuit City store. While at the store, they had fallen under the surveillance of Ronald Morgan, a security guard at the Circuit City store who watched them attempt to purchase a camcorder.

Morgan testified at trial that something about the appearance of the defendant and Cox "grabbed his attention," so he told Howard, a sales associate, as well as the store manager to ask for identification should the defendant or Cox attempt to make a purchase. Morgan watched the two select a camcorder and walk to the register. Morgan testified that at the register, the defendant handed Howard a credit card. Morgan acknowledged that he stayed 5 or 10 feet away from the register and did not see the name on the credit card the defendant tendered to Howard. There is no testimony that Howard saw the name on the card, either.

Howard asked the defendant for identification, as per Morgan's request. The defendant stated that she did not have any, and Cox offered Howard another credit card. Howard returned the first card to the defendant and then asked Cox for identification. Cox showed Howard a New York State identification card that was in his wallet. Howard asked Cox to remove the identification card from his wallet. Morgan further testified at trial that upon Howard's request, Cox said to the defendant, "let's go, we don't need this." Cox retrieved the second credit card, and left the store with the defendant—but without the camcorder.

Morgan followed the defendant and Cox out of the store. Morgan testified at trial that he thought there was "possibly" something wrong because the defendant did not have identification. He called the police department's anti-crime unit.

The police followed the defendant and Cox and observed them for about 20 minutes as they sat in a vehicle. When Cox

began driving, police pulled over the car. Again, police testified at trial that no traffic violations had been committed. Further, there is no testimony that the vehicle, prior to being pulled over, was being used illegally or that the defendant or any other individual in the car was holding illegal contraband within plain view. After stopping the vehicle, police found six stolen credit cards along with a small amount of heroin in the vehicle.

The defendant was charged with possessing six stolen credit cards and a small amount of heroin. She moved to suppress the physical evidence, claiming that the evidence recovered was the product of an unlawful search and seizure because the police stopped her without reasonable suspicion. The court denied this motion, holding that the defendant had not addressed the allegations that she had used stolen credit cards at Circuit City.

It is well established law that police cannot stop an automobile absent at least a reasonable suspicion that the car's occupants had been, are then, or are about to be engaged in criminal conduct. (*People v Sobotker*, 43 NY2d 559 [1978]; *People v Watson*, 157 AD2d 476 [1st Dept 1990], *appeal dismissed* 75 NY2d 971 [1990].) Reasonable suspicion is defined as the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man in the same circumstances to believe criminal activity is at hand. (*People v Cantor*, 36 NY2d 106 [1975].) This Court has held that when information is received by police from an identified informant and the informant bases his information on what he has actually witnessed, such information is sufficient to provide police with reasonable suspicion that a suspect has committed or is committing a crime. (*People v Hicks*, 38 NY2d 90 [1975]; *People ex rel. Gonzalez v Warden of Anna M. Kross Ctr.*, 176 AD2d 438 [1st Dept 1991], *affd* 79 NY2d 892 [1992].) However, a vague or unparticularized "hunch" will not survive the reasonable suspicion standard and justify detention. (*People v Taveras*, 155 AD2d 131, 135 [1st Dept 1990].)

In this case, the record indicates that at the actual time of being detained, the defendant was riding in a vehicle that was being used and operated in a lawful manner and that the defendant was not holding any illegal contraband in plain view or engaging in any illegal activity. Police apparently stopped the vehicle based on information received from an informant, Morgan, who observed the defendant's failure to produce identification when asked for it at Circuit City.

Nowhere in the record did Morgan testify that he told the anti-crime unit that he actually witnessed the defendant use a stolen credit card. In fact, Morgan specifically testified that from his vantage, he could not make out the name on the credit card. Morgan stated that he thought there was "possibly" something wrong because the defendant did not have identification. However, a failure to produce identification would not induce an ordinary prudent man to suspect criminal activity. Morgan's hunch, absent any testimony that he informed police he actually witnessed the defendant attempt to use a stolen card, clearly does not meet the reasonable suspicion standard. Therefore, detaining the defendant was unlawful and any evidence obtained as a result of the illegal search should have been suppressed. (*See Wong Sun v United States*, 371 US 471 [1963].)

The People, relying heavily on *People v Mendoza* (82 NY2d 415 [1993]), oppose the defendant's suppression motion, arguing that the defendant's moving papers did not establish a factual dispute requiring a hearing because the defendant did not address the allegation that she attempted to use a stolen credit card. The People contend that, under *Mendoza*, in order to be entitled to a hearing when moving for suppression of evidence, a defendant must either deny participating in the transaction or suggest some other ground for suppression. (*Id.* at 429.) The factual sufficiency of a suppression motion should be determined with reference to the face of the pleadings, the context of the motion and a defendant's access to information. (*Id.* at 426-429.)

Despite the motion court's findings, there was no allegation that the defendant attempted to use a stolen credit card at Circuit City. Neither the complaint, or the voluntary disclosure form or the indictment address the defendant's conduct before her arrest. The "write-up" read to the defendant at her arraignment did contain information regarding defendant's conduct at Circuit City but it only stated that she attempted to buy a camcorder with credit cards and failed to produce i.d. when asked for it. The defendant did not have to deny an allegation of attempted use of a false credit card because this allegation was not made until the motion court's decision denying the suppression motion.

I believe the defendant is, at least, entitled to a motion hearing under *Mendoza*. She has demonstrated that the evidence obtained at the time of her arrest was obtained through

an illegal search and seizure. Not only did the defendant "suggest some other grounds for suppression" (*id.* at 429), the defendant also denied engaging in illegal activity, which, under the facts of this case, was sufficient to warrant a hearing.

FRIEDMAN and GONZALEZ, JJ., concur with NARDELLI, J.; MAZZARELLI, J.P., and CATTERSON, J., dissent in a separate opinion by CATTERSON, J.

Judgment, Supreme Court, New York County, rendered December 16, 2004, affirmed.